*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SAWSAN BUTRUS,

UNPUBLISHED
January 14, 2021

Plaintiff-Appellant,

v

No. 349884
Wayne Circuit Court
LC No. 18-009706-NF

IDS PROPERTY CASUALTY INSURANCE
COMPANY,

Defendant-Appellee.

Before: K. F. KELLY, P.J., and STEPHENS and CAMERON, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition under MCR 2.116(C)(10) in favor of defendant. Finding error warranting reversal, we vacate the trial court's order and remand for further proceedings consistent with this opinion.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On October 10, 2016, plaintiff was allegedly injured in an automobile accident. She filed a complaint seeking benefits for injuries arising from the accident and made claims for replacement and attendant care services. Defendant moved for summary disposition premised on fraud, contending that its surveillance of plaintiff performing basic activities such as walking, grocery shopping, and taking out the trash demonstrated that her claim for benefits was invalid. The trial court granted summary disposition on February 14, 2018, and this decision is not at issue in this appeal. In granting summary disposition, the trial court applied *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 423-424; 864 NW2d 609 (2014).

This case concerns a second motor vehicle accident that plaintiff was allegedly involved in on August 18 2017, while the first case was still pending. The policy in effect at the time of the accident was issued to Thamer Toma, plaintiff's husband, and Ayden Saffar, one of plaintiff's sons. However, plaintiff was listed as one of the drivers under the policy. The policy contained a fraud-exclusion provision that barred coverage when "any insured or person making [a] claim under this policy" intentionally concealed or misrepresented material facts, engaged in fraudulent conduct, or made false statements in connection with the claim for benefits.

-1-

Defendant refused to pay benefits arising from this accident. On August 3, 2018, plaintiff filed a complaint seeking personal protection insurance benefits (PIP) and uninsured (UM) and underinsured motorist (UIM) benefits stemming from injuries she allegedly suffered in this second accident. During discovery, plaintiff submitted answers to interrogatories indicating her daughter, Rulaa Qaryaqos, was the sole-service provider of household-replacement services while Ayden was the sole provider of attendant care.

Defendant moved for summary disposition of the claims pertaining to the second accident.[1] Defendant challenged plaintiff's claim for household replacement and attendant care services, indicating plaintiff knowingly misrepresented material information about her physical capabilities in her testimony and submissions to defendant. Those submissions, according to defendant, included forms from the first litigation that included different service providers than those plaintiff identified in her discovery responses. Defendant also asserted plaintiff's claims were barred by res judicata and collateral estoppel in light of the summary disposition order in the first case.

Plaintiff opposed defendant's motion by denying that she submitted any forms for payment arising from the first litigation and claiming that her request for benefits was not submitted until mid-2019. She further denied making any false statements and that, although the surveillance showed her performing minor activities, it did not show her attempts to perform "much more arduous tasks" like bathing, dressing, and grooming. Plaintiff also argued res judicata and collateral estoppel did not apply because her claims related to this case had not yet accrued while the first case was pending and the claims pertaining to the second accident involved new injuries.

After a hearing on defendant's motion and the submission of supplemental briefs, the trial court entered an order granting summary disposition in defendant's favor. The order provided in pertinent part: "because there exists no genuine issue of material fact concerning whether Plaintiff is entitled to payment of No-fault benefits by Defendant. Based on the pleadings, IDS is therefore entitled to judgment as a matter of law."

## II. STANDARD OF REVIEW

Summary disposition is appropriate pursuant to MCR 2.116(C)(10) where there is "no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition challenged under MCR 2.116(C)(10), the court considers the affidavits, pleadings, depositions, admissions, and other admissible documentary evidence then filed in the action or submitted by the parties. MCR 2.116(G)(4), (G)(5); *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 68; 919 NW2d 439 (2018). To succeed on a motion for summary disposition, the moving party must make and support the motion with admissible documentary evidence. *McCoig Materials LLC v Galui Constr Inc*, 295 Mich App 684, 694; 818 NW2d 410 (2012). After the

---

[1] Although defendant initially filed a motion for summary disposition in early December 2018, to which plaintiff responded, that motion was voluntarily dismissed by defendant. Instead, the dispositive motion was refiled to incorporate information acquired from plaintiff's February 2019 deposition. Accordingly, only the refiled summary disposition motion is pertinent to this appeal.

moving party makes and supports the motion, the burden shifts to the nonmoving to demonstrate a genuine issue of material fact. *Id.*

### III. APPLICABLE LAW AND ANALYSIS[2]

Because the trial court failed to address plaintiff's status with regard to the policy of insurance from which she sought coverage, any correlation to statutory benefits, and nature of the fraud alleged, we vacate the trial court's decision and remand for further proceedings.

"The primary goal in the interpretation of an insurance policy is to honor the intent of the parties." *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 444; 761 NW2d 846 (2008) (citation omitted). "While exclusions are strictly construed in favor of the insured, this Court will read the insurance contract as a whole to effectuate the intent of the parties and enforce clear and specific exclusions." *Id.* (citation omitted). When relying on an exclusionary clause in an insurance policy, the insurance company has the burden to prove the exclusion applies. *Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 657; 899 NW2d 744 (2017). "[C]lear and specific exclusions will be enforced as written so that the insurance company is not held liable for a risk it did not assume." *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 146; 871 NW2d 530 (2015) (quotation marks and citation omitted).

A common-law fraudulent-procurement defense may be raised to a claim for coverage mandated by the no-fault act. *Bazzi v Sentinel Ins Co*, 502 Mich 390, 400-401; 919 NW2d 20 (2018). If a contract-based defense of fraud is properly derived from either the no-fault act or a common-law defense that has not been abrogated, the contract-based defense is valid and an insurance company may seek to avoid mandatory coverage. *Meemic Ins Co v Fortson*, ___ Mich ___, ___; ___ NW2d ___ (2020) (Docket No. 158302) slip op at 11. Thus, when a post-procurement fraud claim is raised, a contract may be rescinded because of a party's failure to perform a substantial part of the contract or one of its essential terms. *Id.* at slip op 15-16 (quotation marks and citation omitted). Accordingly, a fraud-exclusion provision in an insurance policy may be enforced when the fraud relates to proof of loss on a claim. See *Bahri*, 308 Mich App at 425. The fraud exclusion may be applied against the policyholder pursuant to their contractual agreement. *Shelton*, 318 Mich App at 52. However, it does not govern a non-contracting party or injured person who does not qualify as an "insured" under the policy because no-fault benefits are not governed by a contract in that instance, but rather, benefits are paid pursuant to statute. *Id.* A no-fault insurance policy "applies to accidental bodily injury to the person named in the policy, *the person's spouse, and a relative of either domiciled in the same household*, if the injury arises from a motor vehicle accident." MCL 500.3114(1) (emphasis added).

---

[2] As an initial matter, we note that plaintiff raises the issue of the application of res judicata and collateral estoppel in light of plaintiff's dismissed litigation for the first accident, but notes that it is "unclear" if the trial court applied those doctrines. The trial court's order plainly stated that it merely found "no genuine issue of material fact" regarding plaintiff's lack of entitlement to benefits. The function of the Court of Appeals is to act as an error correcting court. *Burns v Detroit (On Remand)*, 253 Mich App 608, 615; 660 NW2d 85 (2002). Because the trial court did not rely on those doctrines below, we do not address them.

In *Meemic*, Justin Fortson was seriously injured when he fell from the hood of a moving vehicle in September 2009. As a result of brain damage, Justin required constant supervision, and his doctors prescribed long-term care. Instead of sending Justin to a brain-injury rehabilitation center, his parents, the codefendants Richard and Louise Fortson, decided to provide 24-hour attendant care themselves. At the time of the accident, the parents were the named insureds in the policy, and Justin was covered as an "insured person" under the policy's resident relative provision and MCL 500.3114(1). *Meemic Ins Co*, ___ Mich at slip op 2. The parents submitted bills for attendant care and Meemic paid them. However, Meemic conducted an investigation and learned that between September 2012 and July 2014, Justin was jailed for 233 days and in a drug program for 78 days. Nonetheless, the parents billed Meemic for attendant care. Consequently, Meemic filed suit against the parents and Justin, seeking to void the policy pursuant to the antifraud provision and relief from continuing to pay Justin's claim. The antifraud provision provided that it was void "if any insured person" has intentionally concealed or misrepresented any material fact or circumstances relating to the insured, the application, or any claim made under it. *Id*. at 2-3.

Meemic filed suit alleging breach of contract, fraud, common-law and statutory conversion, and unjust enrichment. The Fortsons filed a counterclaim for past and future attendant care benefits. Meemic's initial request for summary disposition was denied premised on the innocent third-party rule, but after the doctrine was overruled by our Supreme Court, the trial court granted summary disposition. This Court reversed, concluding that the fraud did not occur in the procurement of the policy, and the fraud did not affect the validity of the contract. Additionally, it held that the policy's antifraud provision was invalid because it would allow Meemic to circumvent the payment of statutorily mandated benefits. *Id*. at 3-5.

Our Supreme Court noted that, in the context of mandatory no fault coverage, a common-law fraudulent procurement defense may be raised. *Id*. at 8-9. However, the Court went on to clarify that "a provision in an insurance policy purporting to set forth defenses to mandatory coverage is only valid and enforceable to the extent it contains statutory defenses or common-law defenses that have not been abrogated." *Id*. at 10-11. Thus, the Court concluded that the appropriate question was whether a contract-based fraud defense was available by statute or if it was a common-law defense that had not been abrogated. That is, "[i]f the contractual defense is properly derived from either source, it is valid; if not, then it goes beyond what Meemic can assert to avoid mandatory coverage and is invalid and unenforceable." *Id*. at 11.

Our Supreme Court noted that fraud was not provided for in the no-fault act. With regard to the common-law, the Court stated that a contract obtained as a result of fraud only allowed the defrauded party to seek rescission or avoidance of the contract related to the inducement. *Id*. at 11-13. However, with regard to postprocurement fraud, the Court noted that a contractual provision that rescinds a contract because of postprocurement fraud was not invalid in all circumstances. Postprocurement fraud allows for rescission of a contract when a party fails to perform a substantial part of the contract or one of the essential terms. *Id*. at 14. However, mere breach generally did not allow a party to avoid a contract at common law because the facts that warrant rescission must have existed at the time the contract was made. *Id*.

The Court noted that the sweeping antifraud policy at issue here would terminate Justin's benefits "on the basis of the fraudulent activity of anyone who happened to be in or out of the car and entitled to claim under the policy, and the activity could occur years after the policy was

entered and relate to any claim or simply to the 'insurance.' " Because the fraudulent activity by the parents did not induce or deceive Meemic into entering into the policy, Meemic did not rely on any misrepresentations at the time of the insurance policy was executed in 2009. "In short, Meemic's contract-based fraud defense fails because it is not the type of common-law fraud that would allow for rescission." *Id*. at 15-17.

In the present case, the trial court concluded that there was no genuine issue of material fact. However, as a precursor to that determination, it failed to address whether plaintiff was receiving benefits pursuant to the terms of the policy or statutory benefits, the type of fraud at issue and when it occurred, and the remedy for any alleged fraud.[3] Indeed, the trial court failed to address the evidence upon which it relied to conclude there was no genuine issue of material fact. Therefore, it is unknown if the trial court found fraud, the perpetrator of the fraud, and whether the fraud pertained to the policy of insurance, or statutory benefits. Thus, we return this case to the trial court for an appropriate analysis of the issues in light of the applicable law.

Vacated regarding the trial court's summary disposition decision and remanded for further proceedings. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Cynthia Diane Stephens
/s/ Thomas C. Cameron

---

[3] Moreover, since the trial court issued its order, this Court has decided *Haydaw v Farm Bureau Ins Co*, ___ Mich App ___; ___ NW2d ___ (2020) (Docket No. 345516), which addressed denial of claims when fraud occurs after the litigation commences, and *Fashho v Liberty Mut Ins Co*, ___ Mich App ___; ___ NW2d ___ (2020) (Docket No. 349519) which clarified *Haydaw* and limited the holding. Applications for leave to appeal are pending in both *Haydaw* and *Fashho*.